No. ____

# In the United States Court of Appeals for the Fifth Circuit

IN RE GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF TEXAS; AND
STATE OF TEXAS,

*Petitioners.*

On Petition for Writ of Mandamus
to the United States District Court
for the Western District of Texas, Austin Division
Case No. 1:23-CV-00853

## PETITION FOR WRIT OF MANDAMUS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 009)
Austin, Texas 78711-2548
Tel.: (512) 936-2172

AARON L. NIELSON
Solicitor General

LANORA C. PETTIT
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

WILLIAM F. COLE
Deputy Solicitor General

Counsel for Petitioners

## CERTIFICATE OF INTERESTED PERSONS

No. ____

IN RE GREG ABBOTT, ET AL.

Under the fourth sentence of Fifth Circuit Rule 28.2.1, petitioners, as governmental parties, need not furnish a certificate of interested persons.

/s/ Lanora C. Pettit
LANORA C. PETTIT
*Counsel of Record for Petitioners*

i

## Statement Regarding Oral Argument

The issues involved in this petition—whether and when a defendant accused of violating the Rivers and Harbors Act is entitled to trial by jury—easily warrant oral argument. Accordingly, petitioners respectfully request that the Court stay the forthcoming trial pending resolution of this petition for the reasons discussed in their concurrently filed emergency stay motion and set this petition for oral argument. Alternatively, however, because the district court's error is plain under precedent from this Court and the Supreme Court and because trial will begin in this matter one week from today *without* a jury, petitioners respectfully submit that the Court could grant relief without oral argument. Should the Court wish to hold argument, however, petitioners request the opportunity to participate.

# Table of Contents

Page

Certificate of Interested Persons .................................................................i

Statement Regarding Oral Argument ........................................................ii

Table of Authorities ....................................................................................iv

Introduction ..................................................................................................1

Statement of Jurisdiction ............................................................................3

Issue Presented .............................................................................................3

Statement of the Case ..................................................................................4

Summary of the Argument ..........................................................................7

Standard of Review ......................................................................................9

Argument.....................................................................................................11

    I.    The District Court Clearly Abused its Discretion by Denying Texas a Trial by Jury...................................................................................11

        A.   The United States' RHA claim is analogous to a common-law ejectment action traditionally tried to a jury. ....................11

        B.   The RHA's punitive remedies independently entitle Texas to a jury trial. ..................................................................................16

        C.   The district court erred in denying Texas a jury trial here.................19

    II.   Issuance of Mandamus Is Appropriate Under the Circumstances, and Texas Has No Other Adequate Remedy.........................................22

        A.   Mandamus is the appropriate vehicle for remedying the erroneous denial of a right to trial by jury. ..............................23

        B.   Texas has no other adequate means for relief. ....................26

Conclusion...................................................................................................28

Certificate of Service..................................................................................29

Certificate of Compliance .........................................................................29

# Table of Authorities

**Page(s)**

**Cases:**

*Austin v. Shalala,*
  994 F.2d 1170 (5th Cir. 1993) ...................................................12

*Beacon Theatres, Inc. v. Westover,*
  359 U.S. 500 (1959)........................................ 7, 8, 9, 10, 23, 24

*Blanton v. City of N. Las Vegas,*
  489 U.S. 538 (1989)...................................................................17

*Bowen v. Massachusetts,*
  487 U.S. 879 (1988) ....................................................................22

*In re Chamber of Com.,*
  105 F.4th 297 (5th Cir. 2024) ....................................................10

*Cheney v. U.S. Dist. Ct. for D.C.,*
  542 U.S. 367 (2004) ......................................................................9

*In re Citizens Bank, N.A.,*
  15 F.4th 607 (3d Cir. 2021)........................................................25

*In re Clay,*
  35 F.3d 190 (5th Cir. 1994) .................................................10, 25

*In re County of Orange,*
  784 F.3d 520 (9th Cir. 2015) ...................................2, 7, 10, 25

*Curtis v. Loether,*
  415 U.S. 189 (1974) ...............................................................12, 20

*Dairy Queen, Inc. v. Wood,*
  369 U.S. 469 (1962)..........................2, 3, 8, 9, 10, 23, 24, 27

*Dimick v. Schiedt,*
  293 U.S. 474 (1935) ................................................................7, 24

*Erlinger v. United States,*
  144 S.Ct. 1840 (2024) .................................................................12

*In re Fibreboard Corp.,*
  893 F.2d 706 (5th Cir. 1990) ...............................................3, 10, 25

*In re Gee,*
  941 F.3d 153 (5th Cir. 2019) (per curiam)................................3

*Granfinanciera, S.A. v. Nordberg,*
  492 U.S. 33 (1989) .......................................................................13

*Gulfstream Aerospace Corp. v. Mayacamas Corp.,*
  485 U.S. 271 (1988)......................................................................24

*Hecht Co. v. Bowles*,
  321 U.S. 321 (1944) ................................................................ 19, 22
*In re Jensen*,
  946 F.2d 369 (5th Cir. 1991) .........................2, 3, 7, 8, 9, 10, 19, 25, 27
*Larson v. Domestic & Foreign Com. Corp.*,
  337 U.S. 682 (1949) ................................................................22
*Leovy v. United States*,
  177 U.S. 621 (1900) ................................................................18
*In re Lockheed Martin Corp.*,
  503 F.3d 351 (4th Cir. 2007) ......................................................25
*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009) ................................................................26
*Mut. Fire Ins. v. Booth*,
  24 F.3d 240 (5th Cir. 1994) (per curiam) ..........................................25
*Neder v. United States*,
  527 U.S. 1 (1999) ..................................................................26
*New York v. DeLyser*,
  759 F.Supp. 982 (W.D.N.Y. 1991) .................................................. 15
*Nord v. U.S. Steel Corp.*,
  758 F.2d 1462 (11th Cir. 1985) ....................................................18
*In re Oil Spill by the Oil Rig Deepwater Horizon*,
  98 F.Supp.3d 872 (E.D. La. 2015) .................................................12
*In re Pan-Am Life Ins. Co.*,
  188 F.2d 833 (5th Cir. 1951) ......................................................25
*Parsons v. Bedford*,
  28 U.S. (3 Pet.) 433 (1830) .......................................................12
*Pernell v. Southall Realty*,
  416 U.S. 363 (1974) ..................................... 2, 8, 13, 14, 15, 19, 20, 21
*Pollard v. Hagan*,
  44 U.S. (3 How.) 212 (1845) ....................................................... 21
*PPL Mont., LLC v. Montana*,
  565 U.S. 576 (2012) ............................................................... 21
*In re Prudential Ins. Co. of Am.*,
  148 S.W.3d 124 (Tex. 2004) .......................................................26
*Sackett v. EPA*,
  598 U.S. 651 (2023) ............................................................... 21
*In re Sealed Petitioner*,
  106 F.4th 397 (5th Cir. 2024) .....................................................24

*SEC v. Jarkesy,*
  144 S.Ct. 2117 (2024) ............................ 2, 3, 8, 9, 11, 12, 13, 16, 17, 18, 19, 20, 22
*In re Simons,*
  247 U.S. 231 (1918) ................................................................ 2, 8, 9, 24, 26
*Standard Oil Co. v. Arizona,*
  738 F.2d 1021 (9th Cir. 1984) ................................................................ 12
*Starbucks Corp. v. McKinney,*
  144 S.Ct. 1570 (2024) ...................................................................... 19, 22
*Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,*
  429 U.S. 363 (1977) .............................................................................. 14
*Tull v. United States,*
  481 U.S. 412 (1987) .................................. 2, 3, 8, 12, 13, 16, 17, 20, 22
*Tushner v. U.S. Dist. Court for C.D. Cal.,*
  829 F.2d 853 (9th Cir. 1987) ................................................................ 10
*United States v. Abbott,*
  87 F.4th 616 (5th Cir. 2023) ...................................................................5
*United States v. Abbott,*
  No. 23-50632, 2024 WL 3580743 (5th Cir. July 30, 2024) (en banc) .................5
*United States v. Abbott,*
  92 F.4th 570 (5th Cir. Feb. 9, 2024) .....................................................5
*United States v. Rahimi,*
  144 S.Ct. 1889 (2024) .......................................................................... 15
*United States v. Raven,*
  500 F.2d 728 (5th Cir. 1974) ................................................................ 18
*In re Volkswagen of Am.,*
  545 F.3d 304 (5th Cir. 2008) (en banc) ........................9, 10, 11, 23, 26
*Weinberger v. Romero-Barcelo,*
  456 U.S. 305 (1982) .............................................................................. 16
*Whitehead v. Shattuck,*
  138 U.S. 146 (1891) .............................................................................24
*Wilmington Tr. v. U.S. Dist. Court for D. Haw.,*
  934 F.2d 1026 (9th Cir. 1991) .........................................................7, 24

**Constitutional Provisions and Statutes:**

U.S. Const. amend. VII.................................................................... 8, 12

28 U.S.C.:

§ 1331 ......................................................................................3
§ 1345 ......................................................................................3
§ 1355 ......................................................................................3
§ 1355 ....................................................................................17
§ 1651 ......................................................................................3

33 U.S.C.:

§ 403 ...........................................................................4, 13, 21
§ 406 ............................................3, 4, 5, 8, 14, 17, 18, 19
§ 413 ......................................................................................4

Fed. R. Civ. P.:

38 ............................................................................................6
39(a) ......................................................................................6
61 ..........................................................................................26

**Other Authorities:**

9 WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2322 (4th ed. 2024) ........ 2, 10, 23

25 AM. JUR. 2D *Ejectment* §1 (2024) ........................................14

78 AM. JUR. 2D *Waters* §168 (2024) ........................................14

Camilo Montoya-Galvez, *Migrant Crossings Fall Sharply Along Texas Border, Shifting to Arizona and California*, CBS NEWS (Feb. 8, 2024), https://www.cbsnews.com/news/immigration-texas-border-arizona-california-migrants/ ....................................4

F.W. MAITLAND, EQUITY AND THE FORMS OF ACTION AT COMMON LAW (1929) ........................................................................16

Nathan A. Forrester, *Mandamus as a Remedy for the Denial of Jury Trial*, 58 U. CHI. L. REV. 769 (1991) ........................................23

Resolutions of the Stamp Act Congress, Art. VIII (Oct. 19, 1765), reprinted in Sources of Our Liberties 270, 271 (R. Perry & J. Cooper eds. 1959) ........................................................11, 12

Samuel L. Bray, *The Supreme Court and the New Equity*, 68 VAND. L. REV. 997 (2015) ........................................................16, 22

## Introduction

Now on its third trip up to this Court—the first of which was resolved last night by the en banc court—this case needs little by way of introduction. To stem the tide of drugs, weapons, and humans being trafficked over its southern border, last July, Texas proposed to place up to three 1,000-foot rows of four-foot spherical orange buoys at strategic locations in the Rio Grande River. The first (and thus far only) row is anchored approximately two miles south of Eagle Pass, Texas. Although this portion of the river is too shallow even for its law-enforcement boats to traverse after dark, the United States quickly sued Texas and Governor Abbott (collectively, "Texas") under the Rivers and Harbors Appropriation Act of 1899 ("RHA")—a statute designed to ensure navigable waterways remain open to commercial shipping. Based on little more than ipse dixit and a 50-year-old report, the district court issued a preliminary injunction requiring the buoys to be repositioned. Last night the en banc Court reversed, finding that the district court abused its discretion in issuing it.

Initially without reading—let alone ruling on—Texas's motion to dismiss, and with full knowledge that this Court was debating what legal standard should govern, the district court set this case for trial on March 19 and then re-set it for August 6. When the district court finally did rule on that motion, Texas timely answered, invoking its right under the Seventh Amendment to a trial by jury. Late last week, less than two weeks before trial, the district court struck that demand. Texas now asks this Court to vindicate its Seventh Amendment rights by issuing a writ of mandamus.

The Supreme Court has long held that mandamus allows parties to vindicate their right to a jury trial. *See, e.g.*, *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472 (1962). Indeed, for more than a century it has recognized that an order denying a jury trial represents a structural error "that should be dealt with now, before the [party] is put to the difficulties and the courts to the inconvenience" of a trial that will inevitably need to be repeated. *In re Simons*, 247 U.S. 231, 239-40 (1918) (Holmes, J.). Both this Court and others thus assess whether the district court erred in rejecting a Seventh Amendment claim by applying a standard of review that is essentially *de novo*. *See, e.g.*, *In re Jensen*, 946 F.2d 369, 370 (5th Cir. 1991) (addressing the merits); *In re County of Orange*, 784 F.3d 520, 526 (9th Cir. 2015) (same, and collecting citations). Indeed, "Supreme Court and other decisions make it clear that mandamus may be used *routinely* to require a jury trial if it has been denied improperly." 9 WRIGHT & MILLER, FED. PRAC. & PROC. CIV. §2322 (4th ed. 2024) (emphasis added).

The Seventh Amendment affords a right to a jury trial to causes of action that "are analogous to 'Suits at common law.'" *Tull v. United States*, 481 U.S. 412, 417 (1987). Here, an examination of both "the cause of action and the remedy it provides," *SEC v. Jarkesy*, 144 S.Ct. 2117, 2129 (2024), demonstrates that the United States' only remaining claim is analogous to the common-law action for ejectment—a possessory action that the Supreme Court has acknowledged for half a century carries a right to a jury trial. *See Pernell v. Southall Realty*, 416 U.S. 363, 369-76 (1974). That is because a claim under the RHA and an ejectment action both "serve[] the same essential function—to permit the plaintiff to evict one who is wrongfully detaining possession and to regain possession himself." *Id.* at 375.

Regardless, the RHA authorizes *punitive fines*—which the United States' complaint seeks. By no measure are such fines an equitable remedy. Rather, as the Supreme Court reiterated just last month in upholding a Seventh Amendment claim, "only courts of law" may order "monetary penalties to 'punish culpable individuals.'" *Jarkesy*, 144 S.Ct. at 2129 (quoting *Tull*, 481 U.S. at 422). Indeed, that "remedy is all but dispositive." *Id.* Accordingly, even assuming a State could be a proper defendant under the RHA in the first place (a proposition the district court accepted over Texas's protest), Texas is entitled to a jury trial. Because the district court concluded otherwise, Texas's right to relief is "clear and indisputable." *In re Fibreboard Corp.*, 893 F.2d 706, 708 (5th Cir. 1990). The Court should thus "grant the writ." *Jensen*, 946 F.2d at 370.

## Statement of Jurisdiction

The United States invoked the district court's jurisdiction under 33 U.S.C. §406 and 28 U.S.C. §§1331, 1345, and 1355. Because that court dismissed Texas's jury demand, the Court has jurisdiction to issue a writ of mandamus under the All Writs Act, 28 U.S.C. §1651(a). *See In re Gee*, 941 F.3d 153, 157 (5th Cir. 2019) (per curiam); *see also Jensen*, 946 F.2d at 371 (following *Dairy Queen*, 369 U.S. at 480).

## Issue Presented

Whether the Seventh Amendment entitles Governor Abbott and the State of Texas to a trial by jury in the United States' lawsuit brought under the RHA, which seeks an order forcing the removal of a 1,000-foot buoy array from a stretch of the Rio Grande and any "other relief" the district court "may deem just and proper."

## Statement of the Case

As part of its effort to defend its southern border from transnational criminal organizations that make billions trafficking in humans, narcotics, and weapons, Texas deployed a 1,000-foot buoy array in knee-to-waist-deep water at what was (at the time) a border-crossing hotspot near Eagle Pass, Texas. *See* Supp. En Banc Br. for Appellants at 3-10, United States of America v. Abbott, No. 23-50632 (5th Cir. Feb. 26, 2024).[1] Installed as a prototype, this buoy array was one of three designed to be placed strategically in the river to direct migrants to legal ports of entry and to discourage illegal (and hazardous) cross-river traffic. *Id.* at 7-10.

Weeks after these buoys were deployed, however, the United States sued Texas, alleging that their deployment violates the RHA, 33 U.S.C. §§403, 406, and 413. Appx.1-9. The RHA requires that structures in "the navigable capacity of any of the waters of the United States" must be "affirmatively authorized by Congress" or built to "plans recommended by the Chief of Engineers and authorized by the Secretary of the Army," 33 U.S.C. §403. The United States contends that the buoys violate the RHA because they allegedly obstruct the purported "navigable capacity" of the Rio Grande, or are "boom[s]" or "other structures" that were built without a Corps permit. Appx.22-25. Quickly on the heels of its complaint, the United States sought a preliminary injunction requiring the buoys' removal. Appx.10-34. The

---

[1] Public records reflect that due to Texas's actions to defend its border, illegal border crossings are now shifting to points farther west. *See, e.g.*, Camilo Montoya-Galvez, *Migrant Crossings Fall Sharply Along Texas Border, Shifting to Arizona and California*, CBS News (Feb. 8, 2024), https://www.cbsnews.com/news/immigration-texas-border-arizona-california-migrants/.

United States later filed an amended complaint raising an additional claim under the Treaty of Guadalupe Hidalgo. Appx.77-118. That complaint—which remains operative—seeks removal of the buoys and any "other relief as the Court may deem just and proper," Appx.85-86, which under RHA includes punitive fines, 33 U.S.C. §406.

After expedited proceedings, the district court issued a preliminary injunction requiring Texas to reposition the buoys along its riverbank and refrain from placing additional buoys elsewhere, Appx.76 n.32, and a divided panel of this Court affirmed, *see United States v. Abbott*, 87 F.4th 616 (5th Cir. 2023). At Texas's urging, however, the Court vacated the panel decision, and the en banc court reversed. *United States v. Abbott*, No. 23-50632, 2024 WL 3580743 (5th Cir. July 30, 2024) (en banc).

Just two days after the full Court agreed to consider the correct legal standard, the district court announced its intention to hold a trial on March 19, 2024, a mere two months later—even though it had apparently not yet read the State's motion to dismiss the amended complaint, let alone commenced discovery. Appx.162-63. The district court also ordered the parties to designate experts within five days. *Id.* Because this extraordinary order, issued *sua sponte*, appeared to be a thinly veiled effort to defeat the jurisdiction of the en banc Court, Texas filed an emergency motion requesting that trial proceedings be stayed pending the en banc Court's decision regarding the legal standard. Deeming the State's motion a petition for writ of mandamus, a fractured Court denied that motion in an order that produced five separate opinions. *See United States v. Abbott*, 92 F.4th 570 (5th Cir. Feb. 9, 2024) (Mem.).

Following those proceedings in this Court, the trial court issued a scheduling order that set a new trial date of August 6. Appx.164. And after preliminary motions practice led to the United States' amended complaint being dismissed in part (specifically, its claim under the Treaty of Guadalupe Hidalgo), Appx.193-205, Texas submitted its answer, Appx.206-18.

Relevant here, in that answer Texas timely requested a jury trial in accordance with Federal Rule of Civil Procedure 38. Appx.211-12. Yet the district court did not "designate[]" this case "as a jury action" as required by the Civil Rules. Fed. R. Civ. P. 39(a). To correct this apparent oversight, on June 21, Texas filed a motion requesting the district court set the case for jury trial. Appx.219-23. The same day, the United States countered with a motion to strike the State's jury-trial request before filing an opposition to Texas's motion to set the case for jury trial. Appx.224-52, 253-55.

On July 24—more than a month after the motions were filed and less than two weeks from the start of trial—the district court denied Texas's motion to set this case for a jury trial, rejecting Texas's argument that the United States' statutory claim was analogous to a common-law action for ejectment. Appx.267-70. The court reasoned that, unlike an ejectment action, the United States' RHA claim contains no request for damages and is a "purely equitable" action seeking injunctive relief. Appx.268, 70. The court distinguished Texas's contrary cases as involving actions to try title or recover possession of real property. Appx.268. And though observing that the United States is not seeking damages, the district court never addressed that the RHA authorizes punitive fines. Appx.268.

On July 29, Texas filed a motion in the district court to stay trial proceedings to allow this Court to decide whether that trial should proceed in front of a jury. Appx.272-84. The district court denied that motion. Appx.288-91. Although the district court accused Texas of "wait[ing] to file this motion until the eleventh hour," Appx.291, Texas first requested a jury trial in its original answer, filed on May 10—almost three months before the start of trial—and the district court did not reject that request until last week. Had the district court not waited almost five months to resolve Texas's motion to dismiss, moreover, Texas would have demanded a jury trial in that answer even earlier. *Compare* Appx.118 (motion to dismiss) *with* Appx.165 (order on motion to dismiss). This petition follows.

## Summary of the Argument

**I.** "[B]ecause '[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence,'" the Supreme Court has long encouraged appellate courts to review the denial of that right by way of a petition for mandamus, and has stressed that "'any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.'" *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)). Accordingly, when resolving a mandamus petition challenging the denial of a requested jury trial, courts simply ask whether the district court erred. *See, e.g.*, *Jensen*, 946 F.2d at 370; *County of Orange*, 784 F.3d at 526. Courts apply this essentially de novo standard because "the right to a jury trial . . . has occupied an exceptional place in the history of the law of federal mandamus," *Wilmington Tr. v. U.S. Dist. Court for Dist. Haw.*, 934 F.2d 1026, 1028 (9th Cir. 1991)

(following *Simons*, 247 U.S. at 239-40; *Dairy Queen*, 369 U.S. at 472; *Beacon Theatres*, 359 U.S. at 511), and the judiciary has a special duty "to protect the valued right of trial by jury and to avoid costly, multiple trials," *Jensen*, 946 F.2d at 371 (following, "*e.g.*," *Dairy Queen*, 369 U.S. at 472).

The district court committed just such a legal error here. The Seventh Amendment safeguards the right to a jury trial in "[s]uits at common law." U.S. Const. amend. VII. The Supreme Court has not limited that right to only the "'common-law forms of action recognized' when the Seventh Amendment was ratified." *Jarkesy*, 144 S.Ct. at 2128. Instead, the Seventh Amendment "require[s] a jury trial on the merits in those actions that are analogous to 'Suits at common law.'" *Tull*, 481 U.S. at 417. Here, examining both the "cause of action and the remedy it provides," *Jarkesy*, 144 S.Ct. at 2129, the United States' claim under the RHA is analogous to an act of ejectment—a claim the Supreme Court has held is legal in nature and entitles a requestor to a jury. *See Pernell*, 416 U.S. at 369-76.

In holding the contrary, the district court committed legal error thrice over. As an initial matter, it required Texas to identify an 18th-century common-law action that was not just "analogous" to the RHA but instead an exact match. *But see Tull*, 481 U.S. at 417. The court compounded that error by disregarding that both the United States' RHA claim and an ejectment action are aimed at "regain[ing] possession" of property from an intruder. *Pernell*, 416 U.S. at 375. And it completed the hat trick by fixating on the RHA's authorization of a narrow removal order while ignoring that the RHA also authorizes—and that the United States apparently seeks, *see, e.g.*, Appx.78, 85-86—clearly legal remedies such as punitive fines, 33 U.S.C.

§406. As the Supreme Court has held, those are clearly among the remedies that entitled defendants to a jury trial when the Seventh Amendment was enacted. *See Jarkesy*, 144 S.Ct. at 2128. By *itself*, the availability of such fines entitles Texas to a jury trial, *see id.* at 2129—assuming (contrary to the State's position) that Texas is a proper defendant under the RHA in the first place.

**II.**   The Governor and the State also meet the two remaining requirements for mandamus relief. For more than a century, the Supreme Court has held that mandamus is the appropriate vehicle for vindicating Seventh Amendment jury-trial rights. *See, e.g.*, *Dairy Queen*, 369 U.S. at 472, 479-80; *Beacon Theaters*, 359 U.S. at 511 n.20; *Simons*, 247 U.S. at 239-40. For good reason: The denial of this crucial constitutional protection is a form of structural error for which the regular appellate process provides no adequate means of redress. Otherwise, the parties and the judiciary alike would be forced to endure "costly, multiple trials." *Jensen*, 946 F.2d at 371.

## Standard of Review

Three requirements ordinarily guide a court's decision whether to issue a writ of mandamus: (1) the petitioner must "have no other adequate means to attain … relief"; (2) the petitioner's "right to issuance of the writ is clear and indisputable"; and (3) "the writ" must be "appropriate under the circumstances." *In re Volkswagen of Am.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc).

"These hurdles, however demanding, are not insuperable," *id.* (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 381 (2004)), particularly where "errors" by the district court "produce a patently erroneous result" regarding where or how a

case should be litigated, *In re Chamber of Com.*, 105 F.4th 297, 311 (5th Cir. 2024) (quoting *Volkswagen*, 545 F.3d at 310). In particular, given the jury-trial right's "exceptional place in the history of the law of federal mandamus," *County of Orange*, 784 F.3d at 726 (quotation omitted), courts apply essentially *de novo* review when assessing whether "a writ of mandamus is an appropriate remedy to protect the valued right of trial by jury and to avoid costly, multiple trials," *Jensen*, 946 F.2d at 371; *see also In re Clay*, 35 F.3d 190, 191, 198 (5th Cir. 1994) (applying *de novo* review and granting mandamus respecting novel jury-trial question); 9 WRIGHT & MILLER, FED. PRAC. & PROC. CIV. §2322 (4th ed. 2024).

This special standard reflects the priority with which the Supreme Court treats abridgments of the right to a jury trial. *See Dairy Queen*, 369 U.S. at 472; *Beacon Theaters*, 359 U.S. at 511 n.20. Accordingly, "where, as here, the mandamus petition alleges the erroneous deprivation of a jury trial . . . the only question presented is whether the district court erred in denying petitioner's request for a jury trial." *County of Orange*, 784 F.3d at 526. A court thus "may issue the writ even if the petitioner is unable to show a clear and indisputable right." *Id.*; *accord Fibreboard*, 893 F.2d at 707 (articulating the "clear and indisputable" standard but applying essentially de novo review to alleged novel violation of several constitutional protections including the Seventh Amendment). In short, under Supreme Court precedent, if parties "are entitled to a jury trial, their right to the writ is clear." *Tushner v. U.S. Dist. Court for C.D. Cal.*, 829 F.2d 853, 855 (9th Cir. 1987) (Kennedy, J.).

10

**ARGUMENT**

## I. The District Court Clearly Abused its Discretion by Denying Texas a Trial by Jury.

The district court erred by denying Texas's request for a jury trial. Such an abuse of discretion occurs when the court "(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Volkswagen*, 545 F.3d at 310. Any such error means the petitioner's "right to issuance of the writ is necessarily clear and indisputable." *Id.* at 311. Here, Texas was entitled to a jury trial as a matter of law because the United States' RHA claim is analogous to the common-law ejectment cause of action, which has historically been tried to a jury. Regardless, whatever the analogy for the underlying cause of action, "the remedy [here] is all but dispositive" because the RHA also authorizes punitive fines, which independently require a jury trial. *Jarkesy*, 144 S.Ct. at 2129. The district court erred in holding otherwise.

### A. The United States' RHA claim is analogous to a common-law ejectment action traditionally tried to a jury.

**1.** "The right to trial by jury is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right has always been and should be scrutinized with the utmost care." *Jarkesy*, 144 S.Ct. at 2128. "When the English began evading American juries by siphoning adjudications to juryless admiralty, vice admiralty, and chancery courts, Americans condemned Parliament for 'subvert[ing] the rights and liberties of the colonists.'" *Id.* (quoting Resolutions of the Stamp Act Congress, Art. VIII (Oct. 19, 1765), reprinted in Sources of Our Liberties 270, 271 (R. Perry & J. Cooper eds. 1959)). "And when the

English continued to try Americans without juries, the Founders cited the practice as a justification for severing our ties to England." *Id.* (citing Declaration of Independence ¶20; *Erlinger v. United States*, 144 S.Ct. 1840 (2024)).

The Seventh Amendment, designed to remedy these evils, guarantees that in "[s]uits at common law, . . . the right of trial by jury shall be preserved." U.S. Const. amend. VII. In interpreting "suits at common law," the Court has not limited the right to a jury to "'common-law forms of action recognized' when the Seventh Amendment was ratified." *Jarkesy*, 144 S.Ct. at 2128 (quoting *Curtis v. Loether*, 415 U.S. 189, 193 (1974)). "[T]he Framers used the term 'common law' in the Amendment 'in contradistinction to equity, and admiralty, and maritime jurisprudence." *Id.* (quoting *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 446 (1830)). The jury-trial right, therefore, "'embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume.'" *Id.* (quoting *Parsons*, 28 U.S. at 447). Consequently, "[t]he Court has construed" the Seventh Amendment's "language to require a jury trial on the merits in those actions that are analogous to 'Suits at common law.'" *Tull*, 481 U.S. at 417. That is so because while "a jury trial was customary in suits brought in the English *law* courts," it was not in "18th-century cases tried in courts of equity or admiralty." *Id.* States, moreover, enjoy Seventh Amendment jury rights no less than private persons. *See, e.g.*, *In re Oil Spill by the Oil Rig Deepwater Horizon*, 98 F.Supp.3d 872, 883 (E.D. La. 2015); *Standard Oil Co. v. Arizona*, 738 F.2d 1021, 1028 (9th Cir. 1984); *accord Austin v. Shalala*, 994 F.2d 1170, 1175 (5th Cir. 1993).

To determine whether a particular cause of action falls within the Seventh Amendment's ambit, courts focus on whether the claim is "legal in nature." *Jarkesy*, 144 S.Ct. at 2128 (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)). In turn, "[t]o determine whether a suit is legal in nature," courts focus on "the cause of action and the remedy it provides." *Id.* at 2129. The former inquiry requires a "compar[ison] [of] the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Tull*, 481 U.S. at 417. The latter requires an "examin[ation] [of] the remedy sought [to] determine whether it is legal or equitable in nature." *Id.* at 417-18. Here, both lines of inquiry lead to the same inexorable conclusion: Texas is entitled to a trial by jury.

**2.** At the outset, an assessment of the RHA's "cause of action" as compared to "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity," *id.* at 417, reveals that the United States' RHA claim is analogous to an act of ejectment. The Supreme Court has recognized such an action historically required a jury trial. *See Pernell*, 416 U.S. at 369-76.

Under the RHA, the United States claims jurisdiction over the "navigable capacity of any waters of the United States," and pursuant to that authority has forbidden "[t]he creation of any obstruction" in such waters unless "affirmatively authorized by Congress," as well as the "build[ing] or commenc[ing] the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any . . . navigable river" absent the express permission of the Army Corps of Engineers. 33 U.S.C. §403. Should any party transgress this prohibition, the RHA vests a district court, as ancillary to its power to impose punitive remedies like fines,

with the specific power to order "the removal of any structures or parts of structures erected in violation of" the RHA. *Id.* §406.

This statutory scheme bears a striking resemblance to the common-law action for ejectment, which "by the time our Constitution was drafted," had "become the most important common-law possessory action that was "the primary means of trying either the title to or the right to possession of real property." *Pernell*, 416 U.S. at 373. This common-law action for ejectment could even be used to compel the removal of persons or chattels—including from waterways. 25 AM. JUR. 2D *Ejectment* §§1, 18 (2024); 78 AM. JUR. 2D *Waters* §168 (2024); *see Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 365 (1977) (common-law ejectment action involving dispute over parcels in navigable river).

That is exactly what the United States aims to do with this lawsuit: Its cause of action seeks—as did the common-law action for ejectment— "to permit the plaintiff to evict one who is wrongfully detaining possession and to regain possession himself." *Pernell*, 416 U.S. at 375. Specifically, by virtue of the authority it claims under the RHA, the United States asserts superior jurisdiction over, and seeks to "regain possession" of, the 1,000-foot stretch of the Rio Grande in which Texas has placed its buoy array. *Id.* Indeed, the United States' operative complaint repeatedly requests an order "compel[ling]" the Governor and the State "to promptly remove" the buoy system. Appx.86. Texas has countered the United States' argument not only with its own interpretation of the RHA, but also with an argument that the Constitution's Self-Defense Clause provides *Texas* with the superior right to occupy this physical space. Appx.211, 214-16. This litigation over the United

14

States' RHA claim, then, bears all of the hallmarks of an action "to recover real property"—"a right ascertained and protected by courts at common law." *Pernell*, 416 U.S. at 376. Perhaps that is why other cases have placed claims under the RHA and common-law ejectment side by side. *See, e.g.*, *New York v. DeLyser*, 759 F.Supp. 982, 984 (W.D.N.Y. 1991).

This analogy is dispositive of Texas's demand for a jury trial because the Supreme Court has long held that a statutory action for a remedy akin to ejectment is subject to the Seventh Amendment's protections. *See Pernell*, 416 U.S. at 369–76 (finding Seventh Amendment applied to District of Columbia's statutory ouster action "[w]hether or not a close equivalent . . . existed in England in 1791"). Indeed, historically, "questions of fact arising in an ejectment action were resolved by a jury." *Id.* at 374. In fact, "every action recognized in 1791 for the recovery of possession of property carried with it the right to jury trial." *Id.* at 375-76.

To be sure, the RHA's cause of action is not identical to an ejectment action. It arises under a statute and does not directly implicate title. But for the Seventh Amendment to apply, ejectment need not be identical to the RHA or even the closest common-law analogue. As the Supreme Court has explained in a similar context, because law is not "trapped in amber," courts must consider "the principles that underpin our regulatory tradition" to see whether a "new law" is "relevantly similar" to an analogous law. *United States v. Rahimi*, 144 S.Ct. 1889, 1898 (2024) (quotation omitted). An analogous law thus need "not be a dead ringer or a historical twin" of a law that existed at the founding. *Id.* (quotation omitted). And when vindicating the Seventh Amendment specifically, a new law need not be "identical"

to "its common law analogue" so long as there is a "close relationship." *Jarkesy*, 144 S.Ct. at 2131. In *Tull*, for example, the Seventh Amendment applied even though the Clean Air Act provisions at issue there could be analogized to both a legal action in debt *and* an equitable action in nuisance. 481 U.S. at 420-21. Ejectment is thus an "appropriate analog[y]" here, regardless of whether it is possible to dream up a "closer" analogue. *Id.*

Finally, an injunction may be thought of as an equitable remedy as a general matter. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982). But law courts historically could issue injunctions, F.W. MAITLAND, EQUITY AND THE FORMS OF ACTION AT COMMON LAW 15 (1929), and "there have always been nonmonetary remedies outside of equity—not only mandamus but also relief in replevin, *ejectment*, and habeas, as well as in declaratory judgment actions," Samuel L. Bray, *The Supreme Court and the New Equity*, 68 VAND. L. REV. 997, 1045–46 (2015) (emphasis added). Here, by any measure, the United States' requested relief that Texas be ordered to remove its buoys from the State's own claimed waters has a sufficiently "close relationship," *Jarkesy*, 144 S.Ct. at 2131, to an ejectment action that Texas is entitled to a jury trial under Supreme Court precedent.

## B. The RHA's punitive remedies independently entitle Texas to a jury trial.

**1.** Even apart from the narrow ejectment order, further "examination of the remedy provided" by the RHA leads to the same conclusion: The United States' RHA claim is "legal in nature," entitling the Governor and the State to a trial by jury. *Tull*, 481 U.S. at 417. "Remedies intended to punish culpable individuals, as

opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law not courts of equity." *Id.* at 422. "Civil penalties," for example, "are a type of remedy at common law that could only be enforced in courts of law." *Jarkesy*, 144 S.Ct. at 2129. Thus, *whatever* the most analogous cause of action, where the remedy may include a punitive fine rather than disgorgement, a defendant is entitled to a jury. *See, e.g.*, *id.* at 2126.

In this case, the primary remedy provided by the RHA is "all but dispositive." *Id.* at 2129. The RHA provides that a violation of its prohibitions constitutes a misdemeanor, "punish[able] by a fine not exceeding $2,500 nor less than $500 or by imprisonment (in the case of a natural person) not exceeding one year." 33 U.S.C. §406. And by invoking (at Appx.78) the district court's jurisdiction on the basis of 28 U.S.C. §1355, the United States claims that "fines, penalties, and forfeitures, pecuniary or otherwise," *id.*, are among the relief "the Court may deem just and proper," Appx.86 (operative complaint). Indeed, the United States has not identified any relief that could be "just and proper" *other* than a fine.[2] And even if

---

[2] As the United States has not sought to empanel a grand jury (so far as Texas is aware), Texas presumes the United States is *not* seeking imprisonment of anyone involved in the installation of the buoys—though that could also be a permissible remedy. Texas, however, has consistently argued that because the RHA's penalty scheme is inherently incompatible with the sovereignty of States and their officers (which, of course, cannot be imprisoned), States are not proper defendants under the RHA. Appx.125-29, 157-59. The district court disagreed, explaining that Texas should be treated like ordinary RHA defendants. Appx.171-75. If so, then Texas also enjoys all the rights of ordinary RHA defendants, including a jury trial—potentially even under the Sixth Amendment. *Compare Blanton v. City of N. Las Vegas*, 489 U.S. 538, 542 (1989) (jury trial required for any criminal offense punishable by

the United States wished to disavow such a remedy because it would like to avoid the Seventh Amendment, it could not gerrymander its claim to exclude a remedy the statute plainly allows. *See, e.g.*, *Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1474 n.12 (11th Cir. 1985) (explaining that district courts have "wide discretion" to fashion relief, even if not pleaded).

Described as a "punishment[]," 33 U.S.C. §406, such a fine serves no "remedial purpose, but rather can only be explained as . . . serving either retributive or deterrent purposes." *Jarkesy*, 144 S.Ct. at 2129. Indeed, the RHA "tie[s]" this fine's "availability" to "the culpability of the defendant and the need for deterrence, not the size of the harm that must be remedied." *Id.* at 2129-30. Unsurprisingly, then, courts have routinely empaneled juries to adjudicate claims brought under the RHA. *See, e.g.*, *Leovy v. United States*, 177 U.S. 621, 622 (1900) (jury trial resulting in fines for construction of dam); *United States v. Raven*, 500 F.2d 728, 730 (5th Cir. 1974) (jury trial resulting in suspended prison sentence for failing to timely remove sunken vessel).

True, the RHA also authorizes—and the lion's share of the United States' operative complaint seeks, Appx.85-86—relief in the form of a district-court order requiring the "removal of any structures or parts of structures erected in violation of" the RHA. 33 U.S.C. §406. But for purposes of the Seventh Amendment, it is sufficient that "at least *some* of petitioners' claims are properly considered legal in

_____

imprisonment "greater than six months"), *with* 33 U.S.C. §406 (authorizing imprisonment up to "one year").

character." *Jensen*, 946 F.2d at 370 (emphasis added). In other words, where, as here, a remedy (such as a punitive fine) is available that is "legal in character," it does not matter that the plaintiff also seeks relief that is "equitable in nature." *Id.*

Regardless, such non-monetary relief here is no less legal in nature than the punitive fines authorized by the RHA—and that is even apart from the fact that the correct common-law analogy is ejectment. When Congress intends to create an equitable remedy it often deploys "the phrase 'just and proper,'" thereby "invok[ing] the discretion that courts have traditionally exercised when faced with requests for equitable relief." *Starbucks Corp. v. McKinney*, 144 S.Ct. 1570, 1576 (2024). That is, "[t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). But far from conferring "discretion" to "mould each decree to the necessities of the particular case," *id.*, the RHA permits a district court to order one narrow action: "removal" of "structures" in a navigable waterway. 33 U.S.C. §406. Not only is that remedy *precisely* what was available in a legal action for ejectment to which a jury trial attaches, *see Pernell*, 416 U.S. at 375, but it is nothing like free-wheeling equity jurisdiction. This is an action at law.

## C.  The district court erred in denying Texas a jury trial here.

The district court rejected Texas's analysis on grounds that this RHA claim "in no way resembles the common law ejectment action" and the United States does not seek damages. Appx.268. But its analysis of both "the cause of action and the remedy [the RHA] provides," *Jarkesy*, 144 S.Ct. at 2129, is fatally flawed.

**1.** As to the nature of the action, the district court held that unlike in an ejectment action, here "the United States is not trying its title to the Rio Grande River, attempting to recover possession of real property, or bringing a claim as a wrongfully ejected lessee." Appx.268. To start, this analysis reflects an erroneous premise: that the RHA claim must be an exact match to an 18th-century action before the Seventh Amendment right to a jury trial will be honored. As explained above, that is not the law—and the Supreme Court has repeatedly said so.

To the contrary, "it has long been settled that the right extends beyond the common-law forms of action recognized at that time." *Curtis*, 415 U.S. at 193. Instead, as the Supreme Court reiterated just last month, "the Seventh Amendment does apply to novel statutory regimes, so long as the claims are *akin* to common law claims." *Jarkesy*, 144 S.Ct. at 2139 (emphasis added). That is, the Court has required the two causes of action to be "analogous" or "similar to" one another—not on all fours. *Tull*, 481 U.S. at 417. So "[w]hether or not a close equivalent to" the RHA claim "existed in England in 1791 is irrelevant for Seventh Amendment purposes, for that Amendment requires trial by jury in actions unheard of at common law, provided that the action involves rights and remedies of the sort traditionally enforced in an action at law, rather than in an action in equity." *Pernell*, 416 U.S. at 375.

Demanding an exact match between the RHA and a common-law cause of action, the district court overlooked that both the United States' RHA claim and the common-law ejectment action "serve[] the same essential function—to permit the plaintiff to evict one who is wrongfully detaining possession and to regain possession

himself." *Id.* The court appeared to reject this conclusion because the United States is merely enforcing "a Congressional mandate to keep navigable waterways accessible to all, not a right to possession of real property." Appx.269. But the United States can seek to enforce that mandate only because it *is* claiming a jurisdictional right to possession of the contested portion of the Rio Grande. After all, the very basis of the United States' statutory claim is that the contested 1,000-foot stretch of the Rio Grande is a "water of the *United States*," 33 U.S.C. §403 (emphasis added), subject to the exclusive jurisdiction and control of the Army Corps of Engineers and from which it is authorized to exclude Texas.

Furthermore, because "[r]egulation of land and water use lies at the core of traditional state authority," *Sackett v. EPA*, 598 U.S. 651, 679 (2023), and Texas retained its sovereign power over the waterways within and along its territory upon admission to the Union, *Pollard v. Hagan*, 44 U.S. (3 How.) 212, 230 (1845), through its RHA claim the United States necessarily asserts a superior possessory interest over this contested stretch of the Rio Grande by virtue of "rights surrendered and powers granted by the Constitution to the Federal Government," *PPL Mont., LLC v. Montana*, 565 U.S. 576, 590 (2012). This is the type of possessory dispute that the Supreme Court has held is akin to an ejectment action requiring a jury. *See Pernell*, 416 U.S. at 373-76.

**2.**    The district court's analysis of the remedy provided by the RHA fares no better. The court concluded that the RHA claim was not legal in nature because the United States "brings no claim for damages" but instead, "asks for an injunction, which is considered to be equitable relief." Appx.268, 269. But the district court

overlooked that a "remedy at law" and "damages" are not synonymous. *See, e.g.*, *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (distinguishing "an action at law for damages" from "an equitable action for specific relief") (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 688 (1949)); Bray, *supra*, at 1045-46 (distinguishing non-monetary, legal relief from equitable relief). As the Supreme Court explained in *Jarkesy*, a fine designed to punish is "a type of remedy at common law that could only be enforced in courts of law." 144 S.Ct. at 2129 (quoting *Tull*, 481 U.S. at 422). And even putting that aside, none of the relief authorized by the RHA is the typical type of order issued by a court of equity that allows the judge to "exercise . . . discretion," *Starbucks*, 144 S.Ct. at 1577, by "mould[ing] each decree to the necessities of the particular case," *Hecht*, 321 U.S. at 329.

Although the United States does not seek damages, its operative complaint—and the RHA's remedy itself—invokes the fines that are available under the statute. *Supra* at 17-18. Nor has the United States identified any type of relief other than a fine that would fall within its plea for other relief "deem[ed] just and proper." Appx.86. Such fines are indisputably punitive in nature and the mere possibility that they may issue at the conclusion of this suit entitles Texas to a jury trial.

## II. Issuance of Mandamus Is Appropriate Under the Circumstances, and Texas Has No Other Adequate Remedy.

Precedent also overwhelmingly confirms that Texas meets the other two requirements for mandamus relief: Issuance of mandamus to correct the district court's error is appropriate under the circumstances, and the Governor and the State lack any other adequate means to protect their Seventh Amendment rights.

### A. Mandamus is the appropriate vehicle for remedying the erroneous denial of a right to trial by jury.

As detailed above, for more than a century, the Supreme Court has identified mandamus as the proper vehicle for vindicating Seventh Amendment jury-trial rights. Issuing such relief would therefore be "appropriate under the circumstances" here. *Volkswagen*, 545 F.3d at 311. Indeed, as the leading treatise explains, courts "routinely" hold that mandamus may be used "to require a jury trial if it has been denied improperly." 9 WRIGHT & MILLER, FED. PRAC. & PROC. CIV. §2322 (4th ed. 2024). Accordingly, across the country, "most federal courts of appeals now routinely use mandamus to compel the lower court to conduct a jury trial." Nathan A. Forrester, *Mandamus as a Remedy for the Denial of Jury Trial*, 58 U. CHI. L. REV. 769 (1991).

In *Dairy Queen*, for example, the Supreme Court reversed the Third Circuit's denial of mandamus relief with respect to a district court's order striking a jury-trial demand. 369 U.S. at 470. In determining that the "district judge erred in refusing to grant petitioner's demand for a trial by jury" and that "[t]he Court of Appeals should have corrected the error of the district judge by granting the petition for mandamus," *id.* at 479-80, the Court "emphasize[d] the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury," *id.* at 472.

*Dairy Queen* followed on the heels of *Beacon Theaters*, in which the Supreme Court reversed the Ninth Circuit's refusal to grant mandamus relief to a petitioner who was improperly denied the right to a jury trial. 359 U.S. at 511. The Court

rejected the respondent's argument that "mandamus is not available under the All Writs Act" to correct this error, *id.* at 511 & n.20, in large part due to the Seventh Amendment's "importance" and "place in our history and jurisprudence." *Id.* at 501. Instead, the Court emphasized that "'any seeming curtailment of the right to such a jury trial should be scrutinized with the utmost care.'" *Id.* (quoting *Dimick*, 293 U.S. at 486). The Court thus described "the right to grant mandamus to require a jury trial where it has been improperly denied" as "settled." *Id.* at 511 & n.20.

Among the welter of decisions that *Dairy Queen* cited for this "settled" proposition was *Simons*, in which the Supreme Court itself issued a writ of mandamus to a district court to rectify an erroneous denial of a right to a jury trial. 247 U.S. at 231. The Court explained that the wrongful denial of a right to a jury trial "should be dealt with now," before a trial occurs, and "mandamus may be adopted to require the District Court to" satisfy that right. *Id.* at 239-40. Although *Simons* is now a century old, the Court has continued to "ma[ke] clear . . . that a stay order that deprives a party of the right to trial by jury is reversible by mandamus," *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 288 n.13 (1988)—even though the "difficult[y], and perhaps impossib[ility]," of stating "any general rule which would determine" all Seventh Amendment cases, *Whitehead v. Shattuck*, 138 U.S. 146, 151 (1891), might otherwise preclude the Court from awarding mandamus relief, *In re Sealed Petitioner*, 106 F.4th 397, 404 (5th Cir. 2024). After all, unlike some other trial-level objections, a party's demand for "a jury trial" has long "occupied an exceptional place in the history of the law of federal mandamus." *Wilmington Tr.*, 934 F.2d at 1028.

Applying this body of precedent, this Court has repeatedly used mandamus to correct erroneous denials of a right to a jury trial. *See, e.g.*, *Jensen*, 946 F.2d at 371; *Clay*, 35 F.3d at 98; *In re Pan-Am Life Ins. Co.*, 188 F.2d 833, 834 (5th Cir. 1951). It has done so because "a writ of mandamus is an appropriate remedy to protect the valued right of trial by jury and to avoid costly, multiple trials," *Jensen*, 946 F.2d at 371, and no other mechanism exists to safeguard the Seventh Amendment because an order denying a jury trial is interlocutory and outside the purview of the collateral-order doctrine, *Mut. Fire Ins. v. Booth*, 24 F.3d 240 (5th Cir. 1994) (per curiam).

Other courts also hold "a petition for a writ of mandamus is the proper way to challenge the denial of a jury trial." *In re Lockheed Martin Corp.*, 503 F.3d 351, 353 (4th Cir. 2007) (granting mandamus); *see also, e.g.*, *County of Orange*, 784 F.3d at 526 (granting mandamus and remanding for jury trial). Sister courts also echo this Court's jurisprudence with respect to analogous uses of mandamus. For example, this Court used mandamus to order vacatur of a consolidation order that raised novel claims that "such a trial would," among other things, "effectively deny defendants' rights to a jury under the seventh amendment." *Fibreboard*, 893 F.2d at 709. Echoing this analysis, the Third Circuit has held that "mandamus is the only relief available to Citizens that can resolve that [class certification] error," which "create[d] tension with the Seventh Amendment." *In re Citizens Bank, N.A.*, 15 F.4th 607, 616, 620 n.15 (3d Cir. 2021).

Under this well-established body of precedent, mandamus is the "appropriate" vehicle for vindicating the jury-trial right abridged by the district court here.

## B.  Texas has no other adequate means for relief.

Texas also lacks any "other adequate means to obtain the relief [it] desire[s]" through the ordinary appellate process. *Volkswagen*, 545 F.3d at 311. "The operative word, 'adequate', has no comprehensive definition; it is simply a proxy for the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004); *cf. Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) (discussing adequacy in the context of whether review will be permitted under the collateral-order doctrine). Citing rules regarding harmless-error review, this Court has described the inquiry as one of whether the damage would "already have been done by the time the case is tried and appealed, and the prejudice suffered [cannot] be put back in the bottle." *Volkswagen*, 545 F.3d at 319 (citing *inter alia* Fed. R. Civ. P. 61).

As Justice Holmes explained for the Supreme Court over a century ago, a violation of the Seventh Amendment is precisely the type of error that cannot be undone by appeal. After all, when a district court deprives a party of its right to trial by jury, "[i]t is an order that should be dealt with now, before" that party "is put to the difficulties and the courts to the inconvenience" of holding a trial that must be redone because the court labored "under a mistake." *Simons*, 247 U.S. at 239-40. To put it in more modern terms, the denial of a jury is a structural error in the proceeding that "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Neder v. United States*, 527 U.S. 1, 8 (1999). And to avoid forcing the parties and the court to endure "costly, multiple

trials," *Jensen*, 946 F.2d at 371, the Supreme Court has "emphasize[d] the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury," *Dairy Queen*, 369 U.S. at 472. Because Texas has a constitutional right to a trial by jury, such relief is necessary here.

## Conclusion

This Court should grant a writ of mandamus directing the district court to grant Governor Abbott and the State of Texas a jury trial in accordance with their Seventh Amendment rights.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 009)
Austin, Texas 78711-2548
Tel.: (512) 936-2172

Aaron L. Nielson
Solicitor General

/s/ Lanora C. Pettit
Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

William F. Cole
Deputy Solicitor General

Counsel for Petitioners

## CERTIFICATE OF SERVICE

On July 31, 2024, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Lanora C. Pettit

LANORA C. PETTIT

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 21(d) because it contains 7,775 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora C. Pettit

LANORA C. PETTIT